UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE CALIFORNIA

| | |
|---|---|
| NINA ZAMORA,<br><br>        Plaintiff,<br><br>    v.<br><br>SACRED HEART COMMUNITY SERVICE ET AL.,<br><br>        Defendants. | Case No. 24-cv-07733-VKD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; REMANDING TO STATE COURT**<br><br>Re: Dkt. No. 7 |

On August 23, 2024, plaintiff Nina Zamora filed this action in Santa Clara County Superior Court against defendants Sacred Heart Community Service ("Sacred Heart"), Poncho J. Guevara, and Does 1 through 50. *See* Dkt. No. 1 at ECF 12-42 ("Compl."). The complaint asserts five claims of discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940 *et seq*, as well as six claims alleging violations of other California regulations. Compl. ¶¶ 41-156. On November 6, 2024, defendants removed the case to this Court, asserting that Ms. Zamora's claims raise a question of federal preemption by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Dkt. No. 1 at ECF 4. Defendants now move to dismiss Ms. Zamora's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the basis that all her asserted claims are preempted by Section 301 and because she failed to exhaust contractual grievance and arbitration procedures provided in a collective bargaining agreement ("CBA"). Dkt. No. 7. In the alternative, defendants request the Court order Ms. Zamora to provide a more definite statement of her claims under Rule 12(e). *Id.* Ms. Zamora opposes defendants' motion. Dkt. No. 12. The Court heard oral argument on January 21, 2025. Dkt. No. 15.

Upon consideration of the moving and responding papers, and the oral arguments presented, the Court denies defendants' motion to dismiss based on Section 301 preemption and remands the matter to the Santa Clara County Superior Court for further proceedings.

## I.   BACKGROUND

According to the complaint,[1] Ms. Zamora was employed by Sacred Heart as an employment coordinator from November 16, 2021 until May 19, 2023.  Compl. ¶ 19.  Her main responsibilities included "coordinating programs, leading job application workshops, and assisting with resume advice."  *Id.* ¶ 20.

In August of 2022, Ms. Zamora "verbally reported" to her manager that "confidential files were missing from their database."  *Id.* ¶ 21.  She alleges she reported this again in September 2022.  *Id.*  In December 2022, she participated in the "Santa Clara County Social Services Agency Online Privacy and Security Training" where she learned that there may have been a "violation of local, state, and federal law."  *Id.* ¶ 22.  She then reported the missing files to the Santa Clara County Social Services Agency.  *Id.*

Shortly thereafter, Ms. Zamora had "an impromptu performance evaluation" by her manager and another individual where her manager "strongly reprimanded [her] for reporting the incident to the County."  *Id.* ¶ 23.  She "was disciplined with a probationary evaluation where she was threatened that 'funding would now be affected.'"  *Id.*  She asserts that she developed depression and anxiety in February 2023 "as a result of [defendants'] mistreatment . . . and negative work environment."  *Id.* ¶ 24.  Ms. Zamora requested a leave of absence until March 31, 2023.  *Id.*  While on leave, she developed "a separate medical condition affecting her digestive system."  *Id.*  She went to a physician and "received work restrictions" which she submitted to defendants on March 31, 2023.  *Id.* ¶ 26.  She asked for "reasonable accommodations to work from home three days a week until April 26, 2023" but did not receive these accommodations.  *Id.*

Ms. Zamora returned to work on April 4, 2023 but was asked by a manager to go back on leave on April 10, 2023 because her restrictions had not been approved.  *Id.* ¶ 27.  She returned to

---

[1] For purposes of this motion, the Court accepts as true the allegations of fact pled in the complaint.

2

1   work again on April 24, 2023 and requested additional accommodations—namely, the use of a
2   private bathroom and more frequent rest breaks. *Id.* ¶ 28. On May 1, 2023, Sacred Heart agreed
3   to allow her to take more frequent breaks but did not agree to provide a private bathroom. *Id.* Ms.
4   Zamora was also "told that she had to calendar each one of her rest breaks and let everyone in the
5   office know where she was going." *Id.*

6   Ms. Zamora asserts that after she returned from leave Sacred Heart began to retaliate
7   against her. *Id.* ¶ 29. She received a performance review on May 3, 2023 that stated "her
8   performance was in need of improvement in every category." *Id.* Several days later, on May 8,
9   2023, she was placed on a performance improvement plan that included an "explicit reference to
10  [her] practice of utilizing rest breaks." *Id.* On May 17, 2023, due to worsening health challenges,
11  she requested time off from work, but this request was denied. *Id.* ¶ 30. She resigned her position
12  on May 19, 2023. *Id.* ¶ 31.

13  Ms. Zamora contends that, in addition to failing to accommodate her, defendants violated
14  multiple California labor laws during the period of her employment, including by: (1) failing to
15  provide a 30-minute meal break on days that she worked longer than five hours; (2) failing to
16  provide a ten-minute rest period for every four hours worked; (3) failing to provide an additional
17  hour of pay on the days where no compliant meal break or rest period was had; and (4) failing to
18  pay all wages owed to her at the time of her departure. *Id.* ¶¶ 35-38. As a result of these alleged
19  violations, Ms. Zamora asserts that she experienced "pain and suffering," "substantial losses
20  related to the use and enjoyment of wages," and "lost interest on such wages" among other
21  damages. *Id.* ¶¶ 34, 40.

22  Ms. Zamora brings eleven claims under state law against all defendants. The first seven
23  involve claims based on allegations of discrimination and retaliation: discrimination in
24  employment based on disability in violation of FEHA (claim 1); failure to engage in an interactive
25  process in violation of FEHA (claim 2); failure to provide reasonable accommodations in violation
26  of FEHA (claim 3); retaliation for seeking accommodations in violation of FEHA (claim 4);
27  failure to prevent discrimination and retaliation in violation of FEHA (claim 5); retaliation for
28  reporting illegal activities in violation of California Labor Code § 1102.5 (claim 6); and

constructive discharge in violation of California public policy (claim 7).  She also asserts four claims alleging violations of California labor and unfair competition laws: failure to provide proper wage statements in violation of California Labor Code § 226 (claim 8); failure to provide meal and rest breaks in violation of California Labor Code §§ 200, 226.7, and 512 (claim 9); failure to pay compensation upon termination of employment in violation of California Labor Code §§ 201-03 (claim 10); and unfair business practices in violation of California Business and Professions Code § 17200, *et seq.* (claim 11).

Ms. Zamora requests compensatory damages, punitive damages, pre- and post-judgment interest, declaratory relief, reasonable attorneys' fees, and other penalties permitted by statute. Compl. at 26-27.

## II. LEGAL STANDARD

### A. Failure to State Claim under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).  Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B.     Section 301 Preemption

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts," including collective bargaining agreements or CBAs. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). While generally federal preemption "is a defense that does not authorize removal to federal court," Section 301 has "extraordinary preemptive power" such that "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.* at 1152. Once preempted, "'any claim purportedly based on [a] ... state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (alteration in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

The purpose of this preemptive power is "threefold." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 918 (9th Cir. 2018). First, a CBA represents "'an effort to erect a system of industrial self-government,'" and is "part of a 'continuous collective bargaining process' . . . 'a vehicle by which meaning and content are given' to the labor agreement." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580-81 (1960) (*Steelworkers II*) and *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) (*Steelworkers III*)) (citations omitted). Second, a CBA "gives rise to a broader common law of its own—'the common law of a particular industry or of a particular plant'"—which may contain considerations that judges "lack the expertise properly to balance." *Id.* (quoting *Steelworks II*, 363 U.S. at 579). Third, the grievance and arbitration processes set out by a CBA "are believed to provide certain procedural benefits, including a more 'prompt and orderly settlement' of CBA disputes than that offered by the ordinary judicial process." *Id.*

However, the scope of this preemption is limited. "[Section] 301 cannot be read broadly to

5

pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *see also Curtis*, 913 F.3d at 1152 ("'Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states,' and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA.") (citation omitted). Thus, Section 301 preemption applies only to "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).

The Ninth Circuit has established a two-part test for preemption, examining: (1) "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA"; and if so, (2) "whether the right 'is nevertheless substantially dependent on analysis of a collective-bargaining agreement.'" *Kobold*, 832 F.3d at 1032 (quoting *Burnside*, 491 F.3d at 1059). At the first step, the Court considers whether a "claim seek[s] purely to vindicate a right or duty created by the CBA itself." *Curtis,* 913 F.3d at 1152 (quotations omitted). If so, it is preempted. *Id.* at 1153. If not, the Court proceeds to the second step and considers whether the claim can be resolved by "simply looking to versus interpreting the CBA." *Id.* (quotations omitted). "A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 693 (9th Cir. 2001), *as amended* (Aug. 27, 2001). "When the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption." *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007). "Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis*, 913 F.3d at 1153.

## III. DISCUSSION

Defendants assert that "[a]t all times during her employment," Ms. Zamora was a member of a union and her employment was governed by a CBA executed between Sacred Heart and the

6

1    union. Dkt. No. 7 at 5.² As such, defendants argue that Section 301 preemption applies to all of
2    Ms. Zamora's eleven claims. *See* Dkt. No. 7 at 5; Dkt. No. 13 at 3-4; Dkt. No. 15. To the extent
3    any claim is not preempted, defendants argue that Ms. Zamora has failed to allege sufficient facts
4    to support her claims. Dkt. No. 7 at 13-14; Dkt. No. 13 at 5.

5    As an initial matter, the Court determines that the first step of the Section 301 preemption
6    analysis does not apply here. *See* Dkt. No. 15. Each of Ms. Zamora's claims arises under
7    California law, and defendants identify no basis to conclude that the rights underlying the claims
8    were instead "created" by the CBA. *See Curtis*, 913 F.3d at 1152 (preemption does not apply to
9    claims based on "nonnegotiable rights conferred . . . as a matter of state law") (quotations and
10   citation omitted). The Court will therefore proceed to the second step and consider whether
11   resolution of Ms. Zamora's claims requires interpretation of some aspect of the CBA.

12   **A.     Claims 1-7: Discrimination and Retaliation**

13   Ms. Zamora asserts seven claims premised on allegations of discrimination and retaliation,
14   specifically disability discrimination and retaliation for assertion of her rights under FEHA,
15   retaliation for whistleblowing under California Labor Code § 1102.5, and wrongful constructive
16   discharge as a result of the retaliation and discrimination. Compl. ¶¶ 41-123. Defendants argue
17   that these claims are preempted because the CBA contains provisions related to performance
18   management, granting leave, discipline, and discharge, which should govern those claims. Dkt.
19   No. 13 at 2-3.

20   Typically, claims of discrimination and retaliation do not implicate Section 301
21   preemption as they require examination of the employer's conduct and motive, rather than an
22   interpretation of the CBA. *See Little v. Pac. Gas & Elec. Co.,* No. 22-cv-00300-TSH, 2022 WL
23   612668, at *3 (N.D. Cal. Mar. 1, 2022) ("Little alleges PG&E discriminated and retaliated against
24   him *because of his disability* . . . . Such allegations require inquiry into PG&E's conduct and

---

² Defendants request judicial notice of the CBA which is attached to their motion to dismiss. Dkt. No. 7-3. Ms. Zamora does not oppose this request. Defendants' motion is granted. *See Johnson v. Sky Chefs, Inc.*, No. 11-cv-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption.").

application of PG&E's procedures—not into the terms of the CBA itself."); *Robles v. Gillig LLC*, 771 F. Supp. 2d 1181, 1185 (N.D. Cal. 2011) ("It is 'unnecessary to interpret the terms of the CBA in order to adjudicate Plaintiff's discrimination claim because [his] claim turns on [Defendant's] motives, not the parties' contractual rights—whatever the CBA establishes those rights to be.'") (alteration in original) (citation omitted); *see also Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) ("We see no need to depart from a long line of our cases holding that FEHA employment discrimination claims are not ipso facto preempted by § 301 of the LMRA."); *Perez v. Foster Poultry Farms*, No. 22-cv-691-JLT-SAB, 2024 WL 279112, at *4 (E.D. Cal. Jan. 24, 2024) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407(1988)) (Section 1102.5 whistleblower claim not preempted because analysis "require[s] a specific factual inquiry that 'pertains to the conduct of the employee and the conduct and motivation of the employer.'")

Here, Ms. Zamora's claims are premised on defendants' conduct and motive. Defendants do not persuasively argue otherwise, and they have identified no provisions of the CBA that require interpretation in order to resolve her claims. *See* Dkt. No. 13 at 2-3. Mere references to provisions of a CBA are not sufficient to demonstrate the application of Section 301 preemption. *Robles*, 771 F. Supp. 2d at 1184-85. Here, regardless of the content of the leave policies, the performance management plans, and other conditions set out in the CBA, "the resolution of [Ms. Zamora's] claims will turn on the factual determination" of whether the alleged discriminatory and retaliatory actions were a result of her attempts to exercise her rights under FEHA and to report misconduct in the organization. *See id.* at 1185. While defendants may refer to certain provisions in the CBA in an attempt to demonstrate lack of discriminatory or retaliatory animus, they have not shown that *the meaning of any such provision* is at issue.

The Court finds that defendants have failed to establish that Section 301 preemption applies to claims 1-7. The motion to dismiss as to these claims is denied.

### B.     Claims 8-11: Failure to Provide Meal and Rest Breaks

Ms. Zamora also asserts four claims premised on defendants' alleged failure to provide her

1 with meal and rest breaks as required by California Labor Code § 226.7 and § 512(a).[3]
2 Defendants asserted initially that § 512(a) did not apply in view of an exception under § 512(e) for
3 situations in which meal and rest breaks are covered by a CBA. Dkt. No. 7 at 11-12. However,
4 defendants have since conceded that § 512(e) does not apply to Ms. Zamora. Dkt. No. 15; *see
5 also* Dkt. No. 12 at 10.

It is well-established that "the right to meal periods under California law is 'nonnegotiable.'" *Rodriguez v. Pac. Steel Casting Co.*, No. 12-cv-00353 NC, 2012 WL 2000793, at *5 (N.D. Cal. June 1, 2012) (citation omitted). Thus, CBA provisions that establish meal periods or rest breaks that do not at least meet the minimum requirements of California law are not enforceable. *Id.* Here, defendants do not argue that the CBA provides for meal and rest breaks that differ from those required by law. Instead, they merely cite a provision of the CBA that states that the employer has "[t]he right to determine the . . . schedule of lunchtime and break times." Dkt. No. 7-3 at ECF 17. Defendants do not argue that resolution of Ms. Zamora's claims requires interpretation of this provision.

The Court finds that defendants have failed to establish that Section 301 preemption applies to claims 8-11. The motion to dismiss as to these claims is denied.

**C.     Remand**

Defendants concede that, absent the application of Section 301 preemption, there is no basis for federal subject matter jurisdiction. Dkt. No. 15. As the Court has determined Ms. Zamora's claims are not preempted by Section 301, the Court lacks jurisdiction over this matter and the proper recourse is to remand to state court. *Borreani v. Kaiser Found. Hosps.*, 875 F. Supp. 2d 1050, 1054 (N.D. Cal. 2012) ("If, following removal, a federal court determines there was . . . an absence of subject matter jurisdiction, it may remand the action to state court *sua*

---

[3] The Court construes claims 8, 10 and 11 regarding proper wage statements, compensation upon termination, and unlawful business practices as derivative of claim 9, her claim addressing the meal and rest break violations. *See also* Dkt. No. 12 at 11 (asserting that Ms. Zamora's wage statement and waiting time penalty claims are "entirely derivative" of meal and rest period claims). These claims may only succeed if Ms. Zamora prevails on her assertion that she was denied meal and rest breaks as required by California law and thus entitled to premiums under those laws. *See Curtis*, 913 F.3d at 1150 n.3. The Court confirmed at the hearing that Ms. Zamora is not seeking compensation for unpaid overtime in any of these claims. *See* Dkt. No. 15.

*sponte* or on motion of a party."). Accordingly, the Court orders the case remanded.

## IV. CONCLUSION

Defendants' motion to dismiss based on Section 301 preemption is denied. As the Court lacks subject matter jurisdiction absent Section 301 preemption, this action is remanded to Santa Clara County Superior Court for all further proceedings.

**IT IS SO ORDERED.**

Dated: January 28, 2025

Virginia K. DeMarchi
United States Magistrate Judge